**BURLINGTON RESOURCES OIL & GAS COMPANY LP, et al., Petitioners,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent,**

**Pacific Gas and Electric Co., et al., Intervenors.**

Nos. 01–1233, 01–1248, 01–1251, 01–1252, 01–1253.

United States Court of Appeals, District of Columbia Circuit.

April 3, 2002.

Before SENTELLE and ROGERS, Circuit Judges, and WILLIAMS, Senior Circuit Judge.

*JUDGMENT*

PER CURIAM.

These petitions for review were considered on the record from the Federal Energy Regulatory Commission and on the briefs of the parties and the oral arguments of counsel. For the reasons set forth in the accompanying memorandum, it is

ORDERED and ADJUDGED that the orders of the Commission be affirmed.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after the resolution of any timely petition for rehearing or rehearing en banc. See Fed. R.App. P. 41(b); D.C.Cir. Rule 41.

MEMORANDUM

Burlington Resources Oil and Gas Company, Amoco Production Company, BP Energy Company, and Conoco, Inc., (together "Indicated Shippers") challenge as arbitrary and capricious the Federal Energy Regulatory Commission's Order on Remand, *El Paso Natural Gas Co.*, 89 FERC ¶ 61,164 (1999), *reh'g denied,* 90 FERC ¶ 61,354 (2000), and its Compliance Order, *El Paso Natural Gas Co.*, 91 FERC ¶ 61,062 (2000), *reh'g denied,* 91 FERC ¶ 61,306 (2000). We affirm the Commission's orders.

The Indicated Shippers argue that the Settlement locked in fuel rates regardless of any refunctionalizations that might occur. Specifically, they point to Section 15.2 of the Settlement, which states that "the settlement rates established herein will not be subject to change during the term" of the Settlement. Stipulation and Agreement in Settlement of Rate and Related Proceedings, *El Paso Natural Gas Company,* Joint Appendix at 43 ("Settlement"). Indicated Shippers have failed to show, however, that the Order on Remand was unreasonable in finding that fuel rates were not included in the term "settlement rates." Section 3.2 of the Settlement states that "[t]he settlement rates shall consist of" three numbered items, and fuel rates fall under none of the three. *Id.* at 10. Fuel rates, rather, are governed by provisions in Article 8, which is not referenced in Section 3.2. See *id.* In addition, Article 8 allows for periodic adjustments in fuel charges. *Id.* at 25–26; Order Denying Rehearing, 90 FERC at 62,174/1.

Since we hold that FERC's interpretation of the Settlement was reasonable, we need not reach the question whether a FERC modification of the Settlement should proceed under § 4 or § 5 of the Natural Gas Act. As counsel for Indicated Shippers acknowledged at oral argument, for the Commission to prevail, it "must either sustain an argument that it was

correct in its interpretation or it must sustain an argument that the purported modifications [were valid]." Transcript of Oral Argument. But even if we had reached this issue, we would affirm the Commission. FERC's approval of the Settlement was an open question after our remand in *Williams Field Services v. FERC*, 194 F.3d 110 (D.C.Cir.1999), and thus the Commission properly acted under § 4. Indicated Shippers' citation to *Algonquin Gas Transmission Co. v. FERC*, 948 F.2d 1305 (D.C.Cir.1991), is inapposite because in that case FERC attempted to modify a ratemaking methodology that had been previously approved and used and that the settlement did not purport to disturb. *Id.* at 1310–11. Here, FERC had never previously addressed the effect of refunctionalization on fuel rates.

We similarly find nothing improper in the Compliance Order's method of calculating fuel charges. In earlier orders FERC did accept fuel rates for 1999–2000 calculated using purely historical data (i.e., the fuel costs associated with the Chaco and South Carlsbad facilities were removed only for the last two months of the historical base period). See Order Accepting Fuel Adjustment Filing, 85 FERC ¶ 61,388, at 62,504 (1998); Order on Rehearing, 82 FERC ¶ 61,336, at 62,329 n. 15 (1998). Shortly thereafter, however, our decision in *Williams* vacated and remanded FERC's orders insofar as they "addressed the effect of the refunctionalization on El Paso's rates" and relied "on an interpretation of the Settlement." *Williams*, 194 F.3d at 118–19. We also urged FERC "to consolidate all . . . related matters to reach a single, coherent disposition of the outstanding issues." *Id.* at 120. The effect of this was to draw into question the premises underlying the earlier FERC orders.

On the merits, FERC's subsequent decision to remove the fuel costs associated with the Chaco, South Carlsbad, and Blanco facilities for the entire (24–month) historical base period was not unreasonable. Under the Settlement, historical data is only used as a predictor for future fuel costs. See Order Denying Rehearing, 91 FERC at 62,040. As it was clear that costs from the three facilities would no longer be present in the future, the Commission was entitled to remove them from consideration. See *Indicated Shippers v. Sea Robin Pipeline Co.*, 81 FERC ¶ 61,146 (1997). And as counsel conceded at oral argument, the provisions on the periodicity of the fuel charge changes do not explicitly address the issue of complete removal of a facility.

Finally, we decline to second-guess the Commission's use of the date of refunctionalization as the relevant date for fuel cost analysis. Burlington cites no authority establishing that the date of formal abandonment is the sole permissible choice in such circumstances.